Joe Dean BURNEY, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F-78-202.

Court of Criminal Appeals of Oklahoma.

April 26, 1979.

---

James S. Steph, Okmulgee, for appellant.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., Bruce Rooker, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Joe Dean Burney, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Okfuskee County, Case No. CRF–76–6, with the offense of Attempted Larceny of a Domestic Animal, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 1716. His punishment was fixed at five (5) years' imprisonment. From said judgment and sentence a timely appeal has been perfected to this Court.

A summary of the testimony reflects that on February 13, 1976, at approximately 6:00 p. m., Robert Williams was in his yard working on his pickup when he heard a shot. He looked in the northerly direction of the shot and observed a pickup truck parked on the side of the road. After hearing a second shot, he proceeded toward the

parked truck which sped away before he got there. He observed a calf lying by the fence. He pursued the pickup and a high speed chase ensued. At one point he ended up side-by-side with the vehicle and was able to identify defendant as the driver. He stopped and called the sheriff's office and gave a deputy the description of a two tone green Ford pickup with a white camper. He returned home and found that the calf had been shot between the eyes and had been partially gutted.

Deputy Sheriff Joseph Watson received the report of the incident and a description of a vehicle at approximately 6:30 p. m. He observed a vehicle matching the description driving at a high rate of speed. The vehicle was stopped and the defendant placed under arrest. A .22 caliber hull was found on the floorboard of the pickup. The defendant's shirt was partially bloody.

Defendant testified that on the day in question he went fishing, returning home at. approximately 4:00 p. m. He caught several fish which he cleaned, causing the blood to be on his shirt. He went to Henryetta sometime before 4:00 and 5:00 p. m. to get a tie rod for his car. He stopped at a bait shop in Dewar and purchased a six-pack of beer on his way to town. The auto part shop was closed so he drank a beer with an old friend whose name he had forgotten. He was returning home when the deputies stopped him. He gave them permission to search his truck. They waited for Robert Williams to arrive. He denied shooting the calf or ever being in the vicinity where it was shot. He admitted on cross-examination that he had previously been convicted of possessing stolen property.

Defendant asserts in his first assignment of error that the trial court erred in refusing to permit his attorney to read into evidence, testimony given by a witness in a prior trial which resulted in a hung jury. The record reflects that at the commencement of trial, defendant's attorney advised the trial court that one of the defense witnesses had become ill and might not be able to appear and testify. The trial court informed defense counsel that if the witness

was not able to appear that her testimony from the previous trial could be transcribed and read into evidence. Thereafter during the course of the trial, defense counsel informed the trial court that the witness had been taken to a doctor in Tulsa and requested permission to read the transcript. The trial court after being informed that defendant had failed to either subpoena the witness or file a doctor's certificate as to her illness denied defendant's request to read the transcript of her prior testimony. The trial court however informed the defendant that because of the possible misunderstanding that he would grant a mistrial and strike the case from the docket. Defense counsel after consulting with the defendant, informed the trial court that defendant elected to proceed with the trial and would withdraw his request to read the transcript.

██ Defendant now urges that he was misled and entrapped in electing to proceed without the testimony of the witness. We are of the opinion that this assertion is wholly without merit. The record clearly reflects that the election to proceed without the testimony of the witness was made solely by the defendant and without any coercion whatsoever on the part of the trial court. The trial court after being informed of defendant's election to proceed specifically informed the defendant that "I don't want any argument about it later on because if I have taken any unfair advantage of you, I damn sure want it straighten up right now." [Tr. 80]. Defense counsel again informed the court that he withdrew the request to read the testimony.

Having knowingly withdrawn the request at the trial it necessarily follows that there is nothing based thereon for this Court to consider on appeal.

██ Defendant contends in his second assignment of error that the trial court erred in permitting the prosecuting attorney to ask him on cross-examination if he had ever been in the area around where the calf was killed. He further urges that the trial court likewise erred in permitting the State to rebut his negative response by the testi-

mony of two witnesses who testified that they had observed him in the area on several occasions throughout the years. We must disagree with defendant's contentions. The cross-examination as to whether defendant had ever been in the area was proper in that the field was first opened by defendant on direct examination as follows:

"Q. Were you ever over there?

"A. No, sir." [Tr. 94].

It has long been the rule of this State that one who opens up a field of inquiry on direct examination is not in a position to complain on subsequent cross-examination of the same. See *Brewer v. State*, 96 Okl.Cr. 374, 255 P.2d 954 (1953) and *Wiley v. State*, Okl.Cr., 349 P.2d 30 (1960).

 The rebuttal testimony of the two witnesses that they had seen defendant in the area on numerous occasions was further admissible in view of the defendant's specific denial thereof. We have consistently held that rebuttal evidence may be offered to contradict, repel, disapprove, or destroy facts given in evidence by an adverse party in that the admission of such evidence is a matter addressed to the discretion of the trial court whose ruling will not be reversed absent a showing of a manifest abuse of discretion. See *Hicks v. State*, Okl.Cr., 503 P.2d 243 (1972) and *Schneider v. State*, Okl. Cr., 538 P.2d 1088 (1975).

Defendant urges in the final assignment of error that the trial court erred in submitting the case to the jury for punishment based upon the second and subsequent offense. Defendant argues that the trial court should not have instructed the jury under the Habitual Criminal Statute, 21 O.S.1971, § 51 in that the maximum penalty under said section and the maximum penalty under Attempted Larceny of Domestic Animal are both five (5) years. The basis of defendant's argument is that since the second and subsequent statute did not increase the punishment that the sole purpose of such an instruction was to prejudice the jury in its determination of a sentence. Defendant cites as authority *Johnson v. State*, 79 Okl.Cr. 71, 151 P.2d 801 (1944) and *Davidson v. State*, 82 Okl.Cr. 402, 171 P.2d

640 (1946) wherein we held that the allegation of former conviction of a felony should not be charged in capital offenses where there are no lesser included offenses involved. The rationale behind such rulings was that since the allegation of a former conviction of a felony could not enhance the punishment of life imprisonment for death in the electric chair that such allegation might influence the jury to return a verdict of guilty when the evidence of the same was slight.

The rule prohibiting the use of the Habitual Criminal Statute has not been applied by this Court except in Murder cases. See *Cody v. State*, Okl.Cr., 361 P.2d 307 (1961), *Bow v. Raines*, Okl.Cr., 353 P.2d 145 (1960) and *Sheppard v. State*, Okl.Cr., 269 P.2d 791 (1954). Inasmuch as defendant admitted on cross-examination his former conviction of a felony, it would appear most unlikely that any prejudice could have resulted from the subsequent proof of same during the second stage proceeding. We therefore find this assignment of error to be without merit.

CORNISH, P. J., and BRETT, J., concur.